CENTRAL WHOLESALE DISTRIBUTORS, A DIVISION OF TOPEKA LUMBER, INC., Appellant,

v.

James DAY, d/b/a Rainbow Roofing, et al., Respondents.

No. WD 34820.

Missouri Court of Appeals,
Western District.

May 1, 1984.

Peter M. Somerville, Rockport, and Wendell F. Cowan, Jr. and Gary M. Korte, Topeka, Kan., for appellant.

R. Dan Boulware and Michael L. Taylor, St. Joseph, for defendants, Bethesda Foundation, Tarkio Dev. Co., First Federal Sav. & Loan Assoc. of St. Joseph.

Thomas D. Watkins, St. Joseph, trustee for First Fed. Sav. & Loan.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is a civil action seeking judgment on a mechanic's lien. The circuit court entered a judgment of dismissal for noncompliance with Chapter 429, RSMo 1978 upon failure to join a necessary party. The judgment is affirmed.

Three points are presented which charge that the trial court erred in dismissing appellant's claim, because (1) the trial court had jurisdiction over the necessary party (the general contractor), (2) respondents waived their affirmative defense of lack of jurisdiction and are estopped from claiming a lack of jurisdiction, and (3) the purpose of § 429.190, RSMo 1978 had been fully served.

This court has been provided a brief transcript and supporting documents which, in combination, reveal the following pertinent facts. One James Day, d/b/a Rainbow Roofing, contracted to roof the Bethesda Nursing Home in Tarkio, Missouri. Day purchased the roofing materials from Central Wholesale Distributors (plaintiff-appellant and hereinafter referred to as Central) in May, 1981. Day failed to pay Central, and on July 29, 1981, Day filed a Chapter 7 proceeding in the United States Bankruptcy Court, District of Kansas. Because of Day's default, on August 17, 1981, Central filed a notice of a materialmen's lien upon defendants Bethesda Foundation and Tarkio Development Company. On September 8, 1981, Central filed a lien statement.

The result of Day's bankruptcy caused a stay of the lien proceedings as to him. Central then filed in the bankruptcy proceedings a "Complaint to Modify Stay" and a "Stipulation To Modify Stay." Day was a party to these proceedings, and in the stipulation consented to jurisdiction of the Atchison County Circuit Court for purposes of the lien proceedings. This stipulation was not filed in the circuit court at the outset of the lien proceedings, although the bankruptcy court approved both the stay modification and the stipulation. The claimed purpose of both the modification and the stipulation was to satisfy § 429.-190, RSMo 1978, which mandates the naming of all parties to the basic contract in a lien proceeding.

On December 28, 1981, Central filed a petition for foreclosure on its lien, naming Day, Tarkio, Bethesda and the original lienholder, First Federal Savings and Loan Association of St. Joseph. All of the defendants, *except Day*, were personally served with process and all defendants, *except Day*, timely filed their answers. September 28, 1981 was the date service of process issued, and on that date, the circuit clerk, for some unexplained reason and

without request or direction by Central, issued service on Day by registered mail at Day's residence in Hutchison (Reno County) Kansas. This "registered mail service" contained only a copy of Central's petition and *no summons*. Day never claimed the registered mail and it was returned by postal authorities as unclaimed.

From the record before this court, it can be fairly concluded that neither Central nor its counsel was, at that time, aware of the circuit clerk's actions. Between December 31, 1982 and February 24, 1983, pretrial discovery occurred, which included the taking of Day's deposition. The parties filed opposing motions for summary judgment. Defendants also filed a motion to dismiss, and on March 30, 1983, the trial court sustained the motion to dismiss filed by defendants Tarkio, Bethesda, and First Federal on the basis that Day was a necessary and indispensable party and the court lacked jurisdiction over Day. This appeal followed.

Under its point (1), Central charges that the trial court erred in dismissing its claim because the court, in fact, had jurisdiction over Day.

In support of its contention, Central points out that Day agreed to Central's "Complaint To Modify Stay" and agreed to the "Stipulation To Modify Stay" filed in the bankruptcy proceedings. These actions by Day are verified within Day's affidavit filed in the instant proceeding as of March 18, 1983. This March 18, 1983 date was, of course, long after the lapse of the six-month applicable time period prescribed by Chapter 429.

While Central argues that the affidavit by Day was sufficient to confer jurisdiction, Central also argues that further action by Day also conferred jurisdiction. This further action was the acknowledgment by Day of the lien proceedings and the giving of his deposition in furtherance of the lien proceedings. Central thus concludes that the court acquired jurisdiction over Day by Day's consent and voluntary submission to the court's jurisdiction.

Central urges this court to follow and apply the general rule announced in *Bennett v. Shaul*, 318 S.W.2d 307 (Mo.1958), an action for rent and possession of real property, which stated at 309, citing from 21 C.J.S. *Courts* 85c, p. 133:

" 'It is well established, as a general rule, that where the Court has jurisdiction of the subject matter or cause of action, jurisdiction over the persons of the parties may be conferred by consent or where defendant has voluntarily submitted to the jurisdiction of the court. Accordingly, express or implied consent of the parties to the jurisdiction of the court may operate to cure defects of jurisdiction arising from irregularities in the commencement of the proceedings, defective process, or even the absence of process.' "

Central also supports its argument by citing to *State v. Weinstein*, 411 S.W.2d 267 (Mo.App.1967), which quoted the following from *State ex rel. Compagnie Generale Transatlantique v. Faulkenhainer*, 309 Mo. 224, 274 S.W. 758, 761 (1925):

" 'Broadly stated, any action on the part of a defendant, *except to object* to the jurisdiction over his person *which recognizes the case as in court*, will constitute a general appearance.' "

Additionally, Central refers this court to *Hoagland Wagon Co. v. London Guarantee and Accident Co.*, 201 Mo.App. 490, 212 S.W. 393 (1919). Central concludes that since the matter of jurisdiction over Day was a personal matter, the remaining defendants had no standing to challenge the absence of service over Day.

■■■■ No valid objection can be raised to the correctness of the general rules announced in the foregoing authority cited by Central. The problem lies in the fact that authority finds no application herein because of the nature of the instant proceedings. Central instituted recovery under and pursuant to Chapter 429, the Missouri Mechanics' and Materialmen's Lien Law. Thus, Chapter 429 is not only applicable, but controlling.

Section 429.190, RSMo 1978 provides the following:

> "**429.190. Who may be made parties**
>
> In all suits under sections 429.010 to 429.340 the parties to the contract shall, and all other persons interested in the matter in controversy or in the property charged with the lien may be made parties, but such as are not made parties shall not be bound by any such proceedings."

Section 429.190, by its very wording, mandates that all parties to the contract giving rise to the lien claim *shall* be parties to the action for a lien under § 429.010–429.340, RSMo 1978. It is clear from the record herein, and it stands undisputed, that James Day was the general contractor for the roofing of the Bethesda Nursing Home. Day was a party to the contract upon which Central now seeks to enforce its lien claim. By virtue of § 429.190, Day was a necessary party to the lien proceeding and had to be joined in the lien proceeding. That all parties to the original contract are necessary parties, see *Structo Corp. v. Leverage Investment Enterprises Ltd.*, 613 S.W.2d 197 (Mo.App.1981) and *Rackers & Baclesse v. Kinstler*, 497 S.W.2d 549 (Mo.App.1973).

The record herein is quite clear that Day was never served with any process of service within the six-month time limitation prescribed by Chapter 429. Day, as the record shows, was properly served some fourteen months after these proceedings commenced. Thus, the only issue is whether Day's stipulation within the bankruptcy proceedings, his acknowledgment of the lien proceedings, and his giving of his deposition sufficed to bring Day within the jurisdiction of the Atchison County Circuit Court within the requirements of Chapter 429.

Respondents rely upon the case of *Continental Electric Co. v. Ebco, Inc.*, 375 S.W.2d 134 (Mo.1964), contending that case to be completely dispositive of the question. In *Continental*, recovery was sought against Ebco, as a subcontractor, for materials furnished by Continental to Ebco on a building project for the Ford Motor Company. Ebco defaulted. At trial, the jury found for Continental on its lien claim against Ford. The trial court sustained Ford's motion for a verdict in accordance with its previous motion for a directed verdict, or alternatively, in the event such judgment was not upheld that Ford's alternative motion for new trial was to be considered sustained. The Court of Appeals reversed the trial court's ruling and ordered judgment in accordance with the jury's verdict be entered. The case was transferred to the Missouri Supreme Court, which in turn reversed the Court of Appeals.

The Missouri Supreme Court noted that the lien statement had been filed on December 23, 1959 and an action against Ebco and Ford was commenced on February 5, 1960, both such actions being well within the six-month limitation period prescribed by § 429.170, RSMo 1959 (now 1978). Summons issued against both defendants on the same day and Ford was served shortly thereafter. The action was brought in Clay County and the address for Ebco was in Jackson County. The summons for Ebco was forwarded to the sheriff of Jackson County from Clay County on February 10, 1960. On February 10, 1960, the sheriff of Jackson County attempted, without success, to serve Ebco at the address provided. The sheriff of Jackson County notified counsel for Continental that a non-est return was entered, and Continental was so notified on February 11, 1960. On October 7, 1960, a pretrial conference was held, and on October 10, 1960, an alias summons issued against Ebco. Ebco was served on October 14, 1960. In its judgment, the Missouri Supreme Court declared at 136:

> "As the sub-contractor, who purchased the materials for which the lien was sought, Ebco was a necessary party, to any action to enforce a materialman's lien, Section 429.170, RSMo 1959. (citations omitted) An action to enforce a lien must be commenced against all necessary parties within the time prescribed

by statute for instituting the suit after filing of the lien notice." (citations omitted).[1]

Continental argued that the requirements of the lien statute had been satisfied by the filing of the action and the naming of Ebco, and that failure to serve Ebco within the six-month period did not bar recovery against Ford. Ford, on the other hand, argued that the failure to serve Ebco nullified the effect of the suit filing in such a manner as to prevent the expiration of the six-month limitation period.

In ruling against Continental, the Missouri Supreme Court noted that § 429.170 requires that an action to enforce a lien be "commenced" within a six-month period following the filing of the lien statement. The court went on to note, "In our practice, an action is commenced by the filing of a petition and the issuance of a summons." Rule 53.01. The Court further noted that the original summons "is to be issued by the clerk forthwith upon the filing of the petition. The plaintiff is not obligated to take any further steps for such purpose. However, any additional summons issues only at the request of the plaintiff. Civil Rule 54.01 V.A.M.R.."

■■■■ In the instant case, it is obvious to this court, and it must be assumed it was obvious to all the parties and the circuit clerk herein that Day was a resident of Kansas and thus beyond the rule for personal service of process prescribed by Rule 54.13. Thus, Day was amenable to service of process by the alternative methods prescribed by Rules 54.14, 54.15, 54.16, and/or 54.17. It must be noted that to effect proper service under Rules 54.14, 54.15, 54.16, and/or 54.17 requires additional actions by the party seeking such service. From the record before this court, it can only be assumed that the circuit clerk of Atchison County attempted service upon Day under Rule 54.16 by registered mail.

Why this was done remains unexplained to this court, but it is obvious such action was invalid on its face for two reasons.

■■■■ First, counsel for Central, by affidavit, disclaims any request for such service, and this court concludes that no such request was made. Second, the record shows that only a copy of Central's petition was mailed to Day *without any* summons or any copy of summons as required by Rule 54.16. The clerk forwarded the petition copy by registered mail and after the proper time, the postal authorities returned the mail as unclaimed.[2] Why the circuit clerk did not proceed to issue service pursuant to Rule 54.14 is not explained to this court. The net effect, of course, is no valid service of process was attempted or obtained during the applicable six-month time limitation prescribed by Chapter 429, as Day was subsequently served with process on March 14, 1983. Service on Day was had at the same address designated upon the face of the initial petition some 14 months following commencement of these proceedings.

At this point, the question which arises is whether the statutory limitation period of six months was tolled solely by the filing of Central's petition and by the subsequent filing of an affidavit by Day claiming he had voluntarily submitted to the court's jurisdiction and waived service of process, or in contrast, whether Central's claim was barred upon the failure of Day having been properly served within the six-month limitation period.

Pertinent to the answering of the above question, certain facts disclosed by the record herein must be considered. First, it had to be obvious to both Central and the circuit clerk that Day was a nonresident and thus not subject to service of process under Rule 54.13. Second, Central merely disclaims by affidavit that it did nothing to request alternative service, particularly pursuant to Rule 54.16. The record shows

---

**1.** The court noted that in 1959, the applicable time limitation was lengthened from 90 days to six months. The current applicable time is six months. See Laws of Missouri, 1959 (S.C.S.S.B. 257 and 295).

**2.** The return as "unclaimed" is not tantamount to a "refusal" under Rule 54.20(f), so service as attempted herein was invalid.

that Central did nothing relative to service of process until several months later, which resulted in proper service upon Day (March 14, 1983).

At this juncture, if the foregoing facts were the only facts involved, the disposition of this matter would be quite simple, and the answer to the above question would be that Central's claim is barred because no proper service was obtained upon Day within the six-month limitation period. *Continental* would rule the issue squarely because the ruling in *Continental* provides the that joining of necessary parties is mandatory and the six-month limitation period is not tolled, rather, it continues to run if when an action is commenced, proper service of process is not secured within the six-month limitation. Other authority also directs that jurisdiction over a necessary party obtained *after* the lapse of the six-month limitation period bars recovery. *Kinnear Manufacturing Co. v. Myers*, 452 S.W.2d 599 (Mo.App.1970). The same rule was most clearly declared in *Hennis v. Tucker*, 447 S.W.2d 580, 583 (Mo.App.1969), where it was stated, "The filing of a petition and issuance of a summons is but a conditional halting of the statute of limitations, and unless a plaintiff thereafter exercises due diligence in obtaining service of process the statute continues to run." (citations omitted).

█ In the instant case, there are two additional facts which must be considered and weighed relative as to whether this case comes within the rules announced in *Continental, Kinnear*, and *Hennis*. The first of these two facts is the action by the circuit clerk (the invalid attempted service) and whether it, standing alone, relieved Central of any duty to make sure that proper service of process had been secured on Day. While this court is hard pressed to understand just what the clerk was trying to do, particularly in light of no request for such service by Central, the fact remains that attempted service, though patently invalid upon its face, did not relieve Central from exercising due diligence in securing proper service over Day. This is particularly applicable where some 14–20 months later, proper service over Day was had at the same address contained in the original petition.

The second fact needing consideration is whether the action by Central, joined in by Day and supported by Day's subsequent affidavit claiming his submission to the trial court's jurisdiction and waiver of service of process relieved Central from the requirement of having Day properly served within the six-month time limitation. Stated another way, Central claims the prior proceedings in the bankruptcy court (supported by Day's later affidavit) satisfied the requirement for service, to wit, by and through Day's consent to jurisdiction and his claimed waiver of process. In support of this contention, Central argues that in the enforcement of our mechanic's lien law, our courts have declared that it should be liberally construed to carry out its remedial purpose and intent to provide security for mechanics and materialmen. While Central's declaration is an accurate one, it fails to include requisites declared by our courts, which include due diligence by the claiming party and the effect of the failure to properly invoke the court's jurisdiction over necessary parties within the six-month limitation period. *Continental, Kinnear,* and *Hennis, supra. See also Frank Dusselier Basement Builders, Inc. v. Gwico Builders, Inc.*, 449 S.W.2d 865 (Mo.App. 1969).

█ While Central argues that *Continental* is not controlling because in *Continental,* counsel for the plaintiff was notified of a non-est return and did nothing to secure service and in the instant case counsel for Central had no such notice, that fact alone does not erase or relieve any claimant such as Central from the exercise of due diligence in securing proper service of process over *all* necessary parties within the applicable and mandatory six-month limitation period.

The record herein reveals that Day did not enter his appearance, nor did he file a responsive pleading during the mandatory six-month limitation period. The record is

also clear that during that same period, no jurisdiction over Day existed because no proper service of process was had upon him. The proceedings and order of the bankruptcy court were not made a part of these proceedings prior to the lapse of the six-month period. The "conferring of jurisdiction and voluntary waiver" of service by Day was not a part of these proceedings during the six-month limitation period. What Central seeks is the relation back of those bankruptcy proceedings supported by Day's later affidavit for the purpose of constituting a waiver in lieu of or as a substitute to the securing of proper service of process over Day for the purpose of invoking the trial court's jurisdiction over Day and to make such waiver applicable within the six-month limitation period.

Central further argues that Day's affidavit conjunctively discloses Day's notice of the commencement of the lien action against him and his consent to the trial court's jurisdiction over him. The mere fact that Day had notice of the lien proceedings against him does not suffice. Our law requires that a party defendant be formally served with process along with the petition. *Burchett v. Burchett,* 572 S.W.2d 494 (Mo.App.1978). Notice by other methods or means does not suffice and our courts are not empowered to decide issues wherein the requirements of service of process are not met. *Ponder v. Aamco Automatic Transmission, Inc.,* 536 S.W.2d 888 (Mo.App.1976). Our courts are without authority to proceed where a defendant is served contrary to law. *State ex rel. Ballew v. Hawkins,* 361 S.W.2d 852 (Mo.App. 1962). A court cannot proceed unless service of process authorized by law has been achieved. *Kerr v. Kerr,* 519 S.W.2d 303 (Mo.App.1975). Thus, Day's acknowledgment of the lien proceedings did not suffice to confer jurisdiction.

What about Day's claimed consent to jurisdiction and his claimed waiver of process of service? Did such action, claimed subsequent to and by way of affidavit after the expiration of the six-month limitation period, effect jurisdiction of the Atchison County Circuit Court over Day during the applicable six-month period? Once again, it is noted that neither the proceedings in the bankruptcy or the Day affidavit was a part of these proceedings until after the six-month limitation period had lapsed. Thus, neither the remaining parties defendant nor the trial court were formally aware of such actions. As further noted, prior to the lapse of the six-month period, Day did nothing further to invoke the jurisdiction of the circuit court such as entry of appearance and/or the filing of a responsive pleading.

This court is not unmindful of the ruling announced in *Bennett, Weinstein, Compagnie,* and *Hoagland* which recognize that under certain circumstances, jurisdiction over a party defendant can be acquired through the actions of the defendant. This court concludes that those authorities do not control under the particular facts and circumstances herein.

Concerning Central's point (1), this court concludes the following in ruling said point against Central. The trial court did not err in dismissing Central's claim for the reason that the trial court did not have jurisdiction over a necessary and indispensable party, to wit, Day as the general contractor. § 429.190.

Our law makes it quite clear that while Chapter 429 is to be liberally construed to carry out the security for mechanics and materialmen, our law also mandates certain requisites within a specified limit of time, to wit, six months. One of those basic requisites is the invoking of jurisdiction of the court over necessary parties by proper service of process by the lien claimant, or as an alternative to that proper service of process, some conduct by the necessary party defendant to invoke personal jurisdiction, i.e., proper entry of appearance and/or the filing of a responsive pleading. The responsibility to insure proper jurisdiction rests upon the lien claimant within the applicable six-month time limitation period. Failure to secure such proper jurisdiction is fatal to recovery. *Continental, Kinnear,* and *Hennis, su-*

*pra.* A lien claimant's lack of diligence in regard to obtaining proper service of process or some otherwise acceptable waiver of service and submission to jurisdiction bars recovery.

This court concludes that the action by Central and Day in the bankruptcy proceedings, even though confirmed by Day's later affidavit, did not suffice to invoke the jurisdiction of the Atchison County Circuit Court for the purposes of Central's lien claim, because none of these matters, even if otherwise valid (their validity for purposes of the lien proceedings is highly questionable), was before the Atchison County Circuit Court during the applicable six-month limitation period. Central filed its lien proceeding, but proper service of process was not obtained. The six-month statute was not tolled and continued to run. The subsequent affidavit of Day filed long after the six-month limitation period had no retroactive application for the purpose of validity or invoking the jurisdiction of the trial court. Central was in a position to cause the jurisdiction of the trial court to be invoked over Day. Central was advised of Day's address. Central could have sought, in lieu of personal service under Rule 54.13, proper service under Rule 54.14 or 54.16. The record reveals Central's lack of due diligence in obtaining proper service of process over Day during the six-month limitation period. *Continental, supra.*

▇▇▇ Under its point (2), Central charges that the trial court erred in dismissing its claim because respondents waived their affirmative defense of lack of jurisdiction and are estopped from claiming lack of jurisdiction over Day, the general contractor.

No purpose would be served in restating why the trial court lacked jurisdiction over Day, as that was discussed above relative to Central's point (1). It suffices to state that Central's point (2) fails because of the following reasons.

First, respondents' answer contained a specific affirmative defense of appellant's failure to comply with Chapter 429. The record shows that affirmative defense included within it the challenge that appellant failed to properly include a necessary and indispensable party.

▇▇▇ Central argues that respondents' defense was limited just to the question of lack of personal jurisdiction over Day, and since respondents did not, by their answer or alternatively by written motion within twenty days, challenge the jurisdiction of the court over Day as prescribed by Rule 55.27(a) and Rule 55.27(g), respondents are estopped from challenging the jurisdiction over Day. The problem with Central's argument is that it does not encompass the entirety of the defense raised and prescribed by respondents. The affirmative defense states that Central failed to comply with Chapter 429. As observed above, it is required in a proceeding to enforce a mechanic's and materialmen's lien that parties to the contract giving rise to the lien claim are necessary parties and must be properly joined in proceedings to enforce the lien. Section 429.190. Rule 52.04 directs the joining of necessary parties. Section 429.-190 mandates that parties to an original contract be made parties in any lien proceedings. Day was a necessary party, both within § 429.190 and Rule 52.04. With that finding, attention is directed to Rule 55.27(g) which provides that the defense of failure to join a necessary and indispensable party may be raised at anytime. This is precisely what respondents' affirmative defense did, and it was not untimely for that defense to have been considered as it was in respondents' motion to dismiss just prior to trial. Such a defense under Rule 55.27(g) may be raised at anytime. There was no estoppel which could have arisen to respondents' challenge that Central had failed to properly join a necessary and indispensable party. The second reason that Central's point (2) fails is the showing from above that proper jurisdiction was never obtained over Day.

Under its final point (3), Central argues that since there was substantial compliance with Chapter 429, its purpose and intent were served even if it were found that the trial court lacked jurisdiction over Day so

that a bar to recovery by Central could not arise through a dismissal of its claim.

Once again, it is stated that no purpose would be served by restating the facts and issues relative to the lack of the trial court's jurisdiction over Day or the question of claimed estoppel to raise the question, as that has been covered above in disposition of Central's points (1) and (2).

It must be noted from the outset that respondents, by their answer, have challenged Central's substantial compliance with Chapter 429. The issue remained viable at the time the circuit court entered its judgment of dismissal. The same challenge was raised in the motion to dismiss. Respondents correctly point out that a bar to recovery premised upon a statute of limitations (herein, pursuant to Chapter 429, the period is six months) can be raised in a motion to dismiss. *Gramlich v. Travelers Insurance Co.*, 640 S.W.2d 180 (Mo. App.1982). Such a defense must have been properly pleaded and established. *McNulty v. Heitman*, 600 S.W.2d 168 (Mo.App. 1980). Herein, the challenge was properly pleaded and further established at the time argument upon the motion to dismiss was held.

It is correct that Central herein filed a lien notice. It is also correct that Central, within six months, filed its petition naming all defendants within the six months limitation period prescribed by Chapter 429. The record shows some variance between the original amount of material claimed sold by Central and the amount allegedly used by Day on the roof of the Bethesda Nursing Home. The record reveals Central's willingness to mend the lien claim to reflect this difference.

What Central seeks herein is this court's approval of its lien claim, or rather, approval to proceed further on that claim by virtue of Central's actions and compliance within Chapter 429 without the necessity of having obtained proper service upon Day. Stated yet another way, Central urges this court to conclude that since it complied with Chapter 429 in most respects, that suffices to carry out the purpose, intent, and requisites of Chapter 429. This court is asked to ignore the basic and substantial requirement of jurisdiction over a necessary and indispensable party because for the most part, the remainder of Chapter 429 has been met. To grant Central's request would in effect, by court decision, extend the mandatory applicable six-month limitation period. This court has no authority to extend the statute.

The acquiring of proper service of process over the necessary and indispensable party Day as general contractor was, in the opinion of this court, not only just as important as other requisites of statutes (filing of lien statement and petition to enforce, etc.), but because proper service over Day addresses the jurisdiction of the trial court, that part of the proceedings was even more important and crucial to carrying out the intent and purpose of our lien laws. In reality, until the jurisdiction of the trial court is ascertained, the remainder of Central's "compliance" with our lien laws could not be reached. It was basic and elementary to substantial performance under our lien laws that proper jurisdiction over Day be secured. No jurisdiction within the required six-month limitation period was secured. Thus, it cannot be satisfactorily argued that the intent and purpose of our lien laws and that substantial compliance therewith was achieved by Central. Central contends that the legislative intent and purpose of § 429.190 had been carried out by its actions since the purpose or aim of the statute had been complied with. Central relies upon *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588 (Mo.1962), which holds:

"An examination of some of the early cases will disclose that the purpose to be accomplished by the mandatory requirement of the statute that the parties to the contract be made parties to the lien action is to provide a party against whom a personal judgment will lie ... and a party who is in a position to defend the claim forming the basis for the personal judgment sought, and thus the basis for

the establishment of the mechanic's lien."

From the above, Central argues that the record shows a confession of judgment by Day (subsequent to the expiration of the six-month limitation period) in favor of Central and the inability of Central to enforce that judgment because of Day's bankruptcy. To this, Central adds the fact of Day's deposition during which the respondents had opportunity to cross-examine Day, and respondents' failure to file a claim in the bankruptcy proceedings. Thus, Central concludes that it is entitled to satisfy its claim as to Day by means of foreclosure of its lien as to respondents. From this, Central determines satisfaction of the purpose and intent of our lien law.

As noted above repeatedly, the circuit court never acquired jurisdiction over Day. This court rules that proper jurisdiction over a necessary and indispensable party is not only mandatory, but is crucial in both the substantial compliance and the satisfaction of the purpose and intent of our lien laws. Respondents herein were not required to do anything concerning a claim in the bankruptcy proceedings. Likewise, respondents had no responsibility toward seeing that Day was properly within the jurisdiction of the circuit court for these proceedings. The cross-examination of Day at his deposition did not correct or cure the defect of lack of jurisdiction over a necessary and indispensable party, nor did such serve as any form of substitution or constitute a waiver of the requirement that proper jurisdiction over Day was required and mandatory.

It cannot be concluded that because of other actions taken by Central there was substantial compliance with our lien law so as to have carried out the purpose and intent of that law, when it is clear that proper jurisdiction over necessary and indispensable parties remains a basic and integral part of such substantial compliance. The ruling in *Vasquez* does not dictate or suggest that jurisdiction over a necessary party can be dispensed with in seeking enforcement of a lien. That case merely illustrates the "why" of the naming of necessary parties.

This court concludes that there was no substantial compliance with Chapter 429 by Central as to carry out the purpose and intent of Chapter 429 because a necessary and required element to having reached substantial compliance for such purpose was proper jurisdiction being acquired over Day as the general contractor.

There is no merit to Central's final point (3) and it is ruled against Central.

For and upon the reasons set forth herein, the judgment of dismissal heretofore entered by the trial court is in all respects affirmed.

All concur.