LEE DEERING ELECTRIC COM-
PANY, and Bell Electric Con-
tractors, Inc., Plaintiff,

and

Ammonia Master Refrigeration,
Ltd., Appellant,

v.

PERNIKOFF CONSTRUCTION COM-
PANY, Foodbrand, LLC, JFK Con-
struction & Design, Vogel Sheet Met-
al & Heating, Overberg Decorating
Center, Inc., GST, Inc. d/b/a Arena
Systems, and Envirothermics, Inc.,
Defendants,

and

St. Louis Mills, L.P., Respondent.

No. ED 89834.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 29, 2008.

Rehearing Denied March 10, 2008.

Brian E. McGovern, Trenton K. Bond, Chesterfield, MO, for appellant.

Joshua M. Schindler, Clayton, MO, Richard A. Stockenberg, David L. Smith, St. Louis, MO, for plaintiff.

Willard D. McCarter, Joseph C. Blanner, Matthew J. Reh, St. Louis, MO, for respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

Ammonia Master Refrigeration Ltd. (hereinafter, "Ammonia Master") appeals from the trial court's judgment granting St. Louis Mills Limited Partnership's (hereinafter, "the Mills") motion for judgment on the pleadings with respect to Ammonia Master's four count petition in intervention. Ammonia Master raises five points on appeal, arguing the trial court erred in entering judgment on the pleadings in that: (1) *res judicata* did not bar Ammonia Master from asserting its claims in its petition for intervention; (2) the original petition seeking to enforce its mechanic's lien was filed timely; (3) the general contractor was not a necessary and indispensable party; (4) the mechanic's lien created a just and true account; and (5) the petition properly pleaded a count of unjust enrichment against the Mills. We affirm.[1]

The facts are undisputed. This matter arises out of the construction of the St. Louis Mills Mall. The Mills retained Walton Construction Co. (hereinafter, "Walton") as its general contractor to construct an ice rink at this location. Walton then hired a subcontractor, G.S.T., Inc. d/b/a Arena Systems (hereinafter, "Arena Systems"), to construct the ice rink. Arena Systems sought the services of Envirothermics, Inc. (hereinafter, "Envirothermics") to provide specialized chillers to use in the ice rink. Envirothermics then entered into a contract with Ammonia Master, who would construct and deliver the chillers that were needed. On December 17, 2003, Ammonia Master delivered a prefabricated artificial ice plant chiller to the Mills and charged Envirothermics $150,000

for the chiller. Envirothermics made some form of payment, yet a balance of $107,187.28 remained on account.

On February 4, 2004, Lee Deering Electric Co., Inc. (hereinafter, "Lee Deering"), another contractor who performed work at the St. Louis Mills Mall, filed its petition to foreclose on a mechanic's lien against Pernikoff Construction Co., et al. (hereinafter, "the Lee Deering case"). Subsequently, Ammonia Master filed its mechanic's lien statement on April 23, 2004. Thereafter on October 22, 2004, Ammonia Master filed a separate four count petition to foreclose on its mechanic's lien against Envirothermics, Arena Systems, and the Mills. Ammonia Master did not join the Lee Deering case at this time.

Arena Systems and the Mills filed motions to dismiss Ammonia Master's petition. While the motions to dismiss were pending, Ammonia Master sought to intervene in the Lee Deering case. On March 1, 2005, the trial judge presiding over the Lee Deering case granted this motion, ruling Ammonia Master could intervene as a matter of right. On March 2, 2005, the trial judge presiding over Ammonia Master's original petition granted the motions to dismiss, stating, "The Court finds [Ammonia Master] has filed a Motion to Consolidate, or in the alternative, Motion to Intervene in [the Lee Deering case] ... and that on March 1, 2005, [Ammonia Master's] motion to intervene was granted.... Therefore, Defendants' Motions to dismiss are granted."

Approximately two months later, Ammonia Master filed its petition in intervention in the Lee Deering case against Envirothermics, Arena Systems, and the Mills making the same allegations as in its original petition. Counts I, II, and III were

---

1. The Mills' motion to strike portions of Ammonia Master's brief that was taken with the    case is denied.

directed at Envirothermics, while Count IV alleged unjust enrichment against the Mills. The Mills subsequently filed a motion for judgment on the pleadings, which was granted. After all remaining claims and parties were dismissed without prejudice, this case was final for purposes of appeal. Ammonia Master appeals.

When reviewing the trial court's grant of the Mills' motion for judgment on the pleadings, we review Ammonia Master's petition to determine whether the facts pleaded therein are insufficient as a matter of law. *Craig v. Missouri Dep't of Health,* 80 S.W.3d 457, 459 (Mo. banc. 2002). "The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well-pleaded facts in the opposing party's pleadings." *Lone Star Industries, Inc. v. Howell Trucking, Inc.,* 199 S.W.3d 900, 906 (Mo. App. E.D.2006). We will not disturb the granting of the motion if, from the face of the pleadings, the moving party is entitled to a judgment as a matter of law. *Becker v. St. Charles Boat & Motor Inc.,* 131 S.W.3d 868, 870 (Mo.App. E.D.2004).

We begin our review with Ammonia Master's third point, "as the trial court's jurisdiction over the defendant must be established before the plaintiffs' compliance with the remainder of the mechanic's lien statute is properly before this [C]ourt." *Garavaglia v. J.L. Mason of Missouri, Inc.,* 733 S.W.2d 53, 54–55 (Mo. App. E.D.1987). Ammonia Master claims the trial court erred in entering judgment on the pleadings in favor of the Mills, finding it failed to join necessary and indispensable parties. Ammonia Master argues as a lower tier materials supplier, it was not required to join Walton, the general contractor. With respect to Envirothermics, Ammonia Master claims it is "a

defunct Canadian corporation that could not be served" with the petition in intervention.

Section 429.190 RSMo (2000)[2] states that in all mechanic's lien actions "the parties to the contract *shall,* and all other persons interested in the matter in controversy or in the property charged *may* be made parties...." (Emphasis added). Thus, "[a]ccording to the statute, parties to the contract are necessary parties who must be joined in a proceeding to adjudicate a lien." *J.H. Berra Paving Co., Inc. v. City of Eureka,* 50 S.W.3d 358, 360 (Mo.App. E.D.2001).

We begin with Ammonia Master's argument that it did not have to join Walton, the general contractor. If a general contractor is not a party to the contract at issue between the subcontractor and the material supplier, then the general contractor is not a necessary party to a mechanic's lien action. *Iowa Steel Wire Co., Inc. v. Sheffield Steel Corp.,* 227 S.W.3d 549, 557 (Mo.App. W.D.2007). The Mills concedes Walton was not a necessary party to the mechanics lien action given its role as the general contractor and that it was not a party to the contract with Ammonia Master. Therefore, Ammonia Master was not required pursuant to Section 429.190 to join Walton.

With respect to Envirothermics, the Mills asserts that Envirothermics is a necessary party that had to be joined because it was a party to the contract. It is undisputed that Ammonia Master contracted with Envirothermics to supply the ice chiller. As a result, Section 429.190 mandates Envirothermics, as a party to the contract, must be joined in any proceeding to adjudicate a mechanics lien.

**2.** All statutory references are to RSMo (2000) unless otherwise indicated.

■ In addition to Section 429.190's requirement that the parties to the contract *shall* be made parties to the mechanic's lien action, Ammonia Master must also abide by the mandates of Section 429.170. This section provides that a petition to foreclose on a mechanic's lien shall be commenced within six months after filing the lien. "The action is commenced within the statute by the filing of a petition and the issuance of the summons." *City–Wide Asphalt Co., Inc. v. Industrial Paving, Inc.,* 838 S.W.2d 480, 482 (Mo.App. W.D.1992).

■ Assuming *arguendo* that Ammonia Master timely filed its petition in intervention, the petition stated Envirothermics is a Canadian corporation, listed an address, and stated it "may be served with process at that address." The record is devoid of any evidence demonstrating Envirothermics was served with process. "[T]he joining of necessary parties is mandatory and the six-month limitation period is not tolled, rather, it continues to run if when an action is commenced, proper service is not secured within the six-month limitation." *Central Wholesale Distrib., A Div. of Topeka Lumber, Inc., v. Day,* 672 S.W.2d 88, 95 (Mo.App. W.D.1984). Thus, "jurisdiction over a necessary party obtained after the lapse of the six-month limitation period bars recovery." *Id.*

Nine months after filing the petition in intervention and in response to the Mills' motion for judgment on the pleadings, Ammonia Master did not dispute Envirothermics' status as a necessary party. Rather, Ammonia Master alleged, "Envirothermics is a defective, out-of-business bankrupt Canadian corporation. Envirothermics' failure to pay Ammonia Master . . . is the cause of the Mechanic's Lien and this litigation. As Envirothermics is no longer a viable entity, they are unable to be served or joined in this action." Ammonia Master argues our standard of review requires us to accept this allegation as true and infer it unsuccessfully attempted to serve Envirothermics. We disagree.

As noted above, nothing in the record supports Ammonia Masters allegation that it attempted to commence the action by serving Envirothermics with the petition in intervention and issuing a summons. Further, its response to the Mills argument is that Envirothermics could not be served, not that it made an attempt at service which failed. Even if Envirothermics is defunct, Ammonia Master was not relieved from exercising due diligence in securing proper service over Envirothermics, and by failing to do, has been barred from recovery. As the Western District explained in *Central Wholesale:*

> Our law makes it quite clear that while Chapter 429 is to be liberally construed to carry out the security for mechanics and materialmen, our law also mandates certain requisites within a specified limit of time, to wit, six months. One of those basic requisites is the invoking of jurisdiction of the court over necessary parties by proper service of process by the lien claimant, or as an alternative to that proper service of process, some conduct by the necessary party defendant to invoke personal jurisdiction, i.e., proper entry of appearance and/or the filing of a responsive pleading. The responsibility to insure proper jurisdiction rests upon the lien claimant within the applicable six-month time limitation period. Failure to secure such proper jurisdiction is fatal to recovery. A lien claimants lack of diligence in regard to obtaining proper service of process or some otherwise acceptable waiver of service and submission to jurisdiction bars recovery.

> *Id.* at 96–97. (Internal citations omitted).

Based upon Ammonia Master's failure to obtain proper service of process over Envirothermics, the trial court could not invoke its jurisdiction. This was fatal to Ammonia Master's recovery on its petition in intervention to foreclose on the mechanic's lien. Since we find Ammonia Master failed to join a necessary and indispensable party, the trial court's grant of judgment on the pleadings with respect to Ammonia Master's mechanic's lien was proper. Therefore, we need not discuss Ammonia Master's first, second, or fourth point as they relate to other alleged points of error with respect to the mechanic's lien. Point denied.

In its final point, Ammonia Master argues its petition in intervention properly pleaded a cause of action for unjust enrichment. Ammonia Master claims it did not have to plead the Mills failed to pay the general contractor, Walton, in full for the work. Even if it had to plead this, Ammonia Master argues it could be inferred the Mills failed to pay for the work based upon the allegations in the petition. We disagree.

■■■■ "The essential elements of a quasi-contract or quantum meruit claim are that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, that the materials or services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services." *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 206 (Mo.App. W.D.2006). "The principal function of this type of implied contract is the prevention of unjust enrichment, and a claim for quantum meruit does not require the existence of an express agreement between the parties." *Bellon Wrecking & Salvage Co. v. Rohlf-*

*ing*, 81 S.W.3d 703, 711 (Mo.App. E.D. 2002).

This issue has been resolved by the Western District's holding in *Green Quarries, Inc. v. Ernie Raasch*, 676 S.W.2d 261 (Mo.App. W.D.1984). In *Green Quarries*, the subcontractor entered into an agreement with a general contractor to provide rock and concrete for a home improvement project for the property owners. *Green Quarries*, 676 S.W.2d at 263. The materials were delivered and used for the improvements to the home. *Id.* The general contractor failed to pay the subcontractor for the materials, and ultimately filed for bankruptcy. *Id.* Subsequently, the subcontractor demanded payment from the property owners who refused to pay. *Id.* The subcontractor filed a petition alleging a quantum meruit action against the property owners, arguing retention of the rock and concrete unjustly enriched the property owners to the detriment of the subcontractor. *Id.* The property owners moved to dismiss the subcontractor's petition for failure to state a claim, which the trial court granted. *Id.*

The Western District affirmed the dismissal. *Id.* at 267. After discussing the general principles of quasi-contract law and the interrelationship between quantum meruit and unjust enrichment, the court specifically addressed how to resolve the question of whether the property owners were enriched unjustly by retaining the rock and concrete provided by the subcontractor. Initially, "the courts have repeatedly looked to whether the landowner has already paid the general contractor the amount due the general contractor under their express contract." *Id.* at 264. If the facts establish the property owner has paid the general contractor, "the owner's retention of [the materials] without further payment has been found not to constitute unjust enrichment." *Id.*

After rejecting the subcontractor's argument that payment or non-payment is an affirmative defense that must be raised by the property owners, the *Green Quarries* court placed the burden upon the subcontractor to plead non-payment by the property owner to the general contractor in order to state a claim based on unjust enrichment. *Id.* at 265. The Western District explained such allegations are required to protect the property owner from being required to pay for the same benefit twice. *Id.* at 266. The court acknowledged that while "the subcontractor may remain unpaid and thus suffer detriment, equity will not require the owner to pay twice." *Id.* at 264. Thus, the court found the subcontractor's petition failed to state a cause of action based upon unjust enrichment in that it failed to allege the property owners did not pay the general contractor. *Id.* at 266. *See also, International Paper v. Futhey,* 788 S.W.2d 303 (Mo.App. E.D.1990)(holding non-payment by owner is essential element which must be pleaded and proved by subcontractor seeking to establish cause of action for quantum meruit).

We find *Green Quarries* and *International Paper* on point and dispositive of this issue on appeal. Ammonia Master's petition failed to plead or allege the Mills failed to pay Walton for the materials provided by Ammonia Master, an essential element to its claim for unjust enrichment pursuant to the holding in *Green Quarries.* Therefore, the trial court did not error in entering judgment on the pleadings with respect to this claim. Point denied.

The trial court's judgment is affirmed.

MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., concur.